E-FILED
Thursday, 23 July, 2026 12:52:46 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KOLTON WISDOM,
　　　Plaintiff,

v.

TIMOTHY ADESANYA,
　　　Defendant.

Case No. 3:24-cv-03242-JEH

## Order

Plaintiff Kolton Wisdom filed a Complaint under 42 U.S.C. § 1983 alleging Defendant Timothy Adesanya was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate treatment for his shoulder injury while he was incarcerated at Graham Correctional Center ("Graham"). (Docs. 1, 9). Specifically, Plaintiff alleged he experienced ongoing shoulder pain, but Defendant Adesanya refused to prescribe effective pain medication or refer him for an MRI. *Id.* This matter is now before the Court on Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). (Doc. 33). For the reasons stated below, Defendant's Motion is GRANTED.

## I

The Court finds the following material facts. During the relevant period, Plaintiff was in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Graham. Defendant is a Physician's Assistant and was employed by Wexford Health Sources, Inc. at Graham from April 2, 2012, to April 2, 2025. (Doc. 33-5 at ¶ 3).

1

Plaintiff testified he injured his right shoulder while throwing a football in the summer of 2022. (Doc. 33-6 at 26:6-20). On April 10, 2023, Plaintiff made a request to the Health Care Unit ("HCU") to see a doctor about his shoulder. (Doc. 33-1). On April 27, 2023, Plaintiff saw Dr. Steven Kottemann, who noted that Plaintiff initially injured his shoulder four years ago and reinjured it by tossing a football in 2022. (Doc. 33-2 at p. 7; Doc. 33-6 at pp. 30-31). Dr. Kottemann observed full range of motion on both shoulders, prescribed Naproxen for three months for the pain, and ordered a right shoulder x-ray. (Doc. 33-2 at p. 7).

On May 1, 2023, Dr. Kottemann reviewed the Radiology Report, which showed the glenohumeral articulation was normal, there were no significant degenerative changes, the visualized aspects of the humerus were intact, the visualized aspects of the scapula were unremarkable, and there was no evidence of acute fractures, intrabursal calcifications, or loose bodies. (Doc. 33-3).

On June 22, 2023, a registered nurse ("RN") reordered Plaintiff's Naproxen and noted he was on the schedule to follow up with a doctor. (Doc. 33-2 at p. 8).

On June 26, 2023, Plaintiff filed a grievance stating that he has "been complaining about [his right shoulder] to the health care unit for well over a year" and seeking treatment and pain medication. (Doc. 33-4 at pp. 19-20).

On July 6, 2023, an RN administered Naproxen to Plaintiff. (Doc. 33-2 at p. 8). On July 18, 2023, Plaintiff was seen by an RN regarding his right shoulder pain. *Id.* at p. 9. The nurse instructed Plaintiff to continue taking Naproxen and to return to the Medline at 1:00 p.m. on July 19, 2023 for his medication. *Id.*

On July 22, 2023, Plaintiff filed another grievance regarding his right shoulder. (Doc. 33-4 at pp. 11-12). Plaintiff stated he had "no medical treatment or pain medication" and requested pain medication, x-ray results, an MRI, and a referral to a specialist. *Id.*

2

On September 1, 2023, Plaintiff was seen by Defendant Adesanya for his right shoulder pain. (Doc. 33-2 at p. 12). Defendant observed Plaintiff showed no signs of acute distress. *Id.* Defendant noted an x-ray was completed on May 1, 2023, and the results were unremarkable. *Id.* Defendant determined an MRI was unnecessary and prescribed non-steroidal anti-inflammatory medication, but Plaintiff declined the medication, stating "nothing for pain works." *Id.* Plaintiff testified that Defendant explained at this visit that his right shoulder x-ray was normal and showed no degenerative changes or fractures. (Doc. 33-6 at pp. 30-31). Plaintiff also testified his medical records show he declined Ibuprofen and Naproxen from Defendant. *Id.* at pp. 31-32.

On September 1, 2023, Plaintiff filed a grievance alleging that Defendant denied him medical treatment. (Doc. 33-4 at pp. 15-16). Plaintiff requested an MRI and a referral to a specialist. *Id.*

On September 21, 2023, Plaintiff saw Defendant about his shoulder. (Doc. 33-2 at p. 13). Defendant noted that Plaintiff was recently seen on September 1, 2023, and no further imaging was clinically necessary. *Id.* Defendant instructed Plaintiff to return for check-ups as needed. *Id.*

On September 28, 2023, Plaintiff saw an RN about his right shoulder pain. *Id.* at p. 14. The nurse prescribed Ibuprofen three times daily for three days. *Id.*

On May 22, 2024, Plaintiff saw a nurse practitioner ("NP") about his right shoulder pain. *Id.* at p. 22. The NP ordered an x-ray and a follow-up appointment in three to four weeks. *Id.*

On June 18, 2025, Plaintiff was seen by an RN for right shoulder pain and prescribed Tylenol/Ibuprofen, but Plaintiff refused the medication. *Id.* at p. 80.

## II

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

### III

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522.

To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's

4

health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

"Within the universe of deliberate indifference cases is a narrower category where a prisoner alleges not that his condition was ignored entirely, but that he received constitutionally deficient treatment for the condition." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). "[T]hese cases are better framed 'not [as] deliberate indifference to a serious medical need,' but as a challenge to 'a deliberate decision by a doctor to treat a medical need in a particular manner.'" *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). In such cases, courts defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A disagreement between the prisoner and his medical provider "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles*, 771 F.3d at 409 (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)).

## A

First, Defendant argues Plaintiff's right shoulder pain was not a serious medical need. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765-66 (7th Cir. 2002) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)). A serious medical condition exists where "the

failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id*. at 1373-74. Indications of a serious medical need can include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1373.

Defendant argues Plaintiff returned to the HCU only twice after September 2023 for complaints of right shoulder pain – once in May 2024 and again in June 2025. Regarding his shoulder movement, Plaintiff testified "it just depends on the day" and "some days I can move around and it doesn't bother me." (Doc. 33-6 at p. 35). Plaintiff also testified he exercises to maintain a healthy lifestyle, including running, stretching, and yoga. *Id.* at p. 36. Plaintiff testified he is unable to throw anything and does not lift weights due to his shoulder pain. *Id.* at p. 35.

Although Plaintiff's condition did not significantly impair his daily activities, Plaintiff testified he experienced ongoing shoulder pain. Plaintiff's medical records also reflect multiple complaints about shoulder pain and show he was prescribed pain medication, had multiple medical examinations, and received two x-rays. For purposes of summary judgment, the Court finds that Plaintiff's shoulder pain was objectively serious. *See Peters v. Bailey*, No. 17 C 4809, 2020 WL 5593754, at *5 (N.D. Ill. Sept. 18, 2020) (finding shoulder injury was objectively serious medical condition) (citing *Holmes v. Lochard*, No. 17 C 1160, 2018 WL 5815518, at *4 (C.D. Ill. Nov. 6, 2018) ("Plaintiff's self-described [shoulder] pain and limited range of motion allow an inference that he [had an objectively serious medical need]"); *Grovogel v. Racine Cnty. Jail*, No. 16 C 1274, 2018 WL 2135020, at *2 (E.D. Wis. May 9, 2018) ("The court finds that the plaintiff's alleged shoulder injury is a serious medical need").

6

**B**

Second, Defendant argues Plaintiff did not present any evidence that he knew of a substantial risk of harm but disregarded it or abandoned his professional medical judgment when treating Plaintiff. (Doc. 33). Plaintiff argues Defendant was deliberately indifferent to his shoulder injury and pain because he refused to refer him to a specialist and order an MRI and only prescribed Tylenol, Ibuprofen, and Naproxen for the pain, which Plaintiff claims were ineffective. (Doc. 35 at p. 16).

The undisputed facts show Plaintiff was evaluated multiple times between April 2023 and June 2025 for his right shoulder pain, had two x-rays that showed the shoulder was unremarkable, and was prescribed medication for the pain. Plaintiff saw Defendant Adesanya on September 1 and 21, 2023. Defendant reviewed Plaintiff's x-ray, which showed unremarkable views of the right shoulder, in which the glenohumeral articulation was normal and there were no significant degenerative changes. Using his medical discretion and professional judgment, Defendant determined that further diagnostic testing, such as an MRI, was unnecessary. On September 1, 2023, Defendant prescribed non-steroidal anti-inflammatory medication, but Plaintiff declined, stating "nothing for pain works." (Doc. 33-2 at p. 12). During the second examination on September 21, 2023, Defendant noted that Plaintiff was recently seen on September 1, 2023, concluded no further imaging was clinically necessary, and instructed Plaintiff to return for check-ups as needed.

Generally, the choice of diagnostic tests is entrusted to the medical professional's judgment, including whether to order a CT scan or MRI. *See, e.g. Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); *Jackson v. Kotter*, 541 F.3d 688, 698

7

(7th Cir. 2008) (doctor's decision not to refer to orthopedist or for MRI was not deliberately indifferent where doctor considered x-ray, prior orthopedist report and medical history) (reversed on FTCA claim).

Additionally, the decision whether to refer to a specialist is also one entrusted to the medical professional. *See Pyles*, 771 F.3d at 411 ("A prison physician is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care."); *Grund v. Murphy*, 736 F. App'x 601, 604 (7th Cir. 2018) (doctor's decision not to refer inmate to specialist or order MRI regarding breast implant complications was an exercise of professional judgment).

Here, no rational jury could find that Defendant failed to exercise his professional judgment. Based on Defendant's physical examination of Plaintiff and the prior x-ray report, Defendant concluded no further imaging was necessary. *See Pyles*, 771 F.3d at 411 (no deliberate indifference to inmate's alleged continued excruciating back pain where doctors ordered pain medicine and stretching exercises, refusing to order a second MRI or referral); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (no deliberate indifference where doctor decided an MRI was not necessary to diagnose cause of inmate's continued shoulder pain). Plaintiff argues Defendant "refused to treat [him] because he wasn't going to waste the state[']s money because Plaintiff wanted to 'come to prison, lift weights and hurt himself.'" (Doc. 35 at p. 19). However, "[Plaintiff] did not submit any evidence from which a jury reasonably could find that [Defendant's] exercise of medical judgment departed significantly from accepted professional norms." *Pyles*, 771 F.3d at 411 (citing *Roe v. Elyea*, 631 F.3d 843, 857-58 (7th Cir. 2011); *Jackson v. Kotter*, 541 F.3d 688, 697-98 (2008)).

While Plaintiff may have wanted Defendant to order further imaging, Plaintiff's disagreement with the course of treatment provided is not an Eighth Amendment violation. *See Snipes*, 95 F.3d at 592 ("A prisoner's dissatisfaction with

a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.") (citations and quotations omitted). No reasonable jury could find that Defendant was deliberately indifferent to Plaintiff's shoulder injury or pain. Defendant is entitled to summary judgment.

## IV

For the reasons stated, *supra*:

(1)    Defendant's Motion for Summary Judgment [33] is GRANTED. Defendant Timothy Adesanya is DISMISSED WITH PREJUDICE. Plaintiff takes nothing. Each side is to bear their own attorney's fees, costs, and expenses. The Clerk is directed to enter judgment and close this case.

(2)    Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorney's fees of the opposing party related to their response to the motion for reconsideration.

(3)    Plaintiff remains responsible for paying any remainder of the $350 filing fee. (See d/e 9/13/2024).

(4)    If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(5)    To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue

9

of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: July 23, 2026

s/Jonathan E. Hawley
U.S. District Judge